No. 24-3277

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 10, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | )   O R D E R |
| | ) |
| CITY OF AKRON, OH, | ) |
| | ) |
| Defendant-Appellant, | ) |
| | ) |
| and | ) |
| | ) |
| STATE OF OHIO, | ) |
| | ) |
| Defendant-Appellee. | ) |

Before: SUHRHEINRICH, SILER, and READLER, Circuit Judges.

The City of Akron, Ohio, appeals the district court's order denying its motion to modify a 2014 consent decree related to its treatment of sewage and wastewater. It moves to stay, pending appeal, its obligation to construct an enhanced high-rate treatment ("EHRT") facility. The United States opposes a stay. The State of Ohio does not appeal but responds in support of the stay. Akron also moves for leave to exceed the word limits. We deny Akron the preliminary relief it seeks.

In 2009, the United States filed an action against Akron, alleging that it had violated the federal Clean Water Act and the National Pollutant Discharge Elimination System permit that it

had been issued under that Act. The amended complaint claimed that Akron violated federal law and the terms of its permit by discharging certain amounts of untreated wastewater into the Cuyahoga River. Specifically, the United States alleged that Akron violated the federal combined sewer overflow control policy (the "CSO Policy") by experiencing 7 untreated overflow or discharge events into the Cuyahoga River per year. The United States also alleged that Akron violated the terms of its NPDES permit by exceeding the effluent limitations for discharges into the Cuyahoga River.

In January 2014, the United States and Akron entered into a consent decree designed to bring Akron into compliance with federal and state law. Specifically, the decree aimed to cause "Akron to come into and remain in full compliance with the terms and conditions of Akron's Current NPDES Permit and to meet the objectives of the Combined Sewer Overflow Control Policy." To that end, the decree required Akron to complete twenty-six projects. As of today, Akron is on pace to complete all of those projects except for the last one—construction of a $209 million enhanced high-rate treatment facility.

In September 2023, Akron moved to modify the consent decree, seeking to eliminate its obligation to construct the enhanced treatment facility. Akron argued that, in completing the decree's first 24/25 projects, it had achieved full compliance with the federal CSO policy and its NPDES permit. Akron asked the district court to modify the consent decree primarily on those grounds. The district court denied Akron's motion to modify, and Akron appealed. In the interim, Akron seeks to stay its obligation under the consent decree to construct the enhanced facility.

I.

Akron first argues that the Consent Decree entitles it to an automatic stay. We do not resolve this question. After Akron moved in this Court for a stay, Akron asked the district court

for the first time to resolve the question of whether the Consent Decree entitles Akron to an automatic stay in this particular factual setting. That question should be resolved first by the district court. If the district court rejects Akron's argument below, it can surely seek appellate review.

II.

Akron next urges this Court to issue an order under Federal Rule of Appellate Procedure 8, staying its obligation to design and construct the enhanced treatment facility during the appeal. Even if we had the ability to grant that kind of relief under Rule 8, we decline to do so.

"Even with a high likelihood of success on the merits," preliminary relief "is not warranted unless the plaintiff[] [is] likely to suffer irreparable injury in the absence of interim relief." *Commonwealth v. Biden*, 57 F.4th 545, 555 (6th Cir. 2023). Here, Akron argues that it will be forced to sign contracts, borrow money, and expend resources to begin the EHRT project, and because the United States is the opposing party, Akron cannot recoup any financial loss. Although "economic injuries caused by federal agency action are generally unrecoverable," *Ohio v. Becerra*, 87 F.4th 759, 783 (6th Cir. 2023) (quoting *Ohio v. Becerra*, No. 21-4235, 2022 WL 413680, at *4 (6th Cir. Feb. 8, 2022) (order)), Akron has not sufficiently quantified the harm that it will suffer in the immediate future. When will Akron enter into these contracts? How much money will Akron need to borrow in the future? How much money will Akron have to expend in the immediate future? Indeed, if Akron faced immediate irreparable harm, why did the City not move for emergency relief? Why did Akron wait one month after the district court's order denying the motion to modify the consent decree to seek a stay? A merits panel will resolve Akron's case on the merits soon enough. We decline Akron's request for a traditional stay in the meantime.

Accordingly, the motion for a stay pending appeal is **DENIED**. The motion to exceed word limits is **GRANTED**.

ENTERED BY ORDER OF THE COURT

*Kelly L. Stephens*
Kelly L. Stephens, Clerk
