# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NOS. 24-3277, 24-4074 |
| | ) | |
| Plaintiff-Appellee, | ) | On appeal from the U.S. District |
| | ) | Court for the Northern District of |
| vs. | ) | Ohio, Case No. 5:09-CV-00272 |
| | ) | |
| CITY OF AKRON, OHIO, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| STATE OF OHIO, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

---

## APPELLANT CITY OF AKRON'S
## RENEWED MOTION FOR STAY PENDING APPEAL
### [Expedited Consideration Requested]

---

Pursuant to Fed. R. App. P. 8(a), Appellant City of Akron, Ohio ("Akron"), hereby submits the following Renewed Motion for a Stay Pending Appeal. This renewed motion is being filed because the Sixth Circuit's Order, dated December 10, 2024, denying Akron's original stay motion <u>specifically</u> <u>refrained</u> from deciding whether Akron was entitled to a stay under the plain language of Paragraph 67 of the Consent Decree until the District Court had an opportunity to rule on this issue in the first instance. (*See* Order in Case No. 24-3277, dated Dec. 10, 2024). In so doing, the Court observed that, once the District Court ruled on whether Paragraph

67 of the Consent Decree granted an automatic stay, then Akron could seek "appellate review" of the District Court's ruling with this Court. (*Id.* at pg. 3).

As set forth more fully in the attached Memorandum, the District Court has now ruled on the question of whether Paragraph 67 of the Consent Decree grants an automatic stay pending appeal, and Akron has filed a timely Notice of Appeal from the District Court's Order that has been assigned Case No. 24-4074. (Doc.#416, District Court's Order, dated 12/02/2024, PageID#42302); (Doc.#420, Notice of Appeal, dated 12/16/2024, PageID#42322). Moreover, in light of the Court's denial of Akron's original stay motion on December 10, 2024, Akron respectfully requests that the Court expedite its consideration of this Renewed Stay Motion. In light of the Court's denial of a stay, Akron is now forced to move forward with the bidding process for the design and construction of the $209 million EHRT facility or potentially face additional stipulated penalties of $5,000 per day for each additional day of non-compliance. (*See* Ex. A, Supplemental Declaration of Chris Ludle, ¶ 7).

Akron should not be placed in this precarious situation, however, because, as demonstrated below, Akron is entitled to an automatic stay of the EHRT requirements under Paragraph 67 of the Consent Decree until the judicial review process has been completed. Accordingly, Akron respectfully renews its Motion to Stay Pending Appeal based upon the stay provisions of Paragraph 67 of the Consent Decree, and requests that the Court expedite its consideration of this Stay Motion.

WHEREFORE, Akron hereby renews its Motion to Stay the deadlines for bidding and constructing the EHRT facility under Row 11.a. of the Long Term Care Update (Doc.#123-2, PageID#6392) based upon the stay provisions of Paragraph 67 of the Consent Decree (Doc.#155, PageID#7252), and respectfully requests that the Court expedite its consideration of this Motion.

Respectfully submitted,

*/s/  Stephen W. Funk*

Stephen W. Funk (0058506)
Terrence S. Finn (0039391)
Roetzel & Andress, LPA
222 South Main Street
Akron, OH  44308
Telephone: 330.376.2700
Email:  sfunk@ralaw.com

*Attorneys for Defendant-Appellant*
*City of Akron, Ohio*

## **BRIEF IN SUPPORT OF RENEWED MOTION FOR STAY**

This Motion is a Renewed Motion for a Stay of Akron's obligation to design and construct a $209 million enhanced high rate treatment ("EHRT") facility pending appeal from the district court's order, dated March 1, 2024, denying Akron's Motion to Modify a 2014 Consent Decree under Fed. R. Civ. P. 60(b)(5). Akron originally filed a Motion for Stay with this Court on April 30, 2024, after first requesting a stay from the District Court, as required by App. R. 8(a). The original Motion for Stay, however, was not ruled upon by this Court until approximately 7½ months later when a three-judge motions panel issued an Order on December 10, 2024, that denied Akron's stay motion. (*See* Sixth Circuit Order, dated 12/10/2024).

In so doing, however, the motions panel expressly refrained from ruling on Akron's legal argument that Paragraph 67 of the Consent Decree expressly provides for an automatic stay pending appeal because the District Court had not yet ruled upon this legal issue. (*Id.* at pg. 3). Instead, the Motions Panel ruled that it would not rule upon this legal issue until after the District Court had decided the issue first, and Akron sought "appellate review" of the District Court's ruling. (*Id.*) Accordingly, since the District Court has now ruled upon this legal issue, and Akron has filed a timely appeal from the District Court's Order under 28 U.S.C. § 1291 and 1292(a), it hereby renews its Motion for a Stay Pending Appeal.

Indeed, as discussed more fully below, it is clear from the plain language of Paragraphs 67 and 113 of the Consent Decree that an automatic stay arises whenever there is a dispute in which the United States and Ohio have adopted "materially different or irreconcilable positions" about a proposed modification of the Consent Decree under Paragraph 113. (Doc.#155, 2014 Consent Decree, ¶ 67, PageID#7252, and ¶ 113, PageID#7266-67). Such a stay ensures that no substantive actions shall be taken until the judicial review process has been completed, which, in this case, means that the stay shall remain in effect until the Court resolves the pending appeal. (*Id.*)

Here, it is undisputed, as the District Court found, that the United States and Ohio adopted "materially different" and "irreconcilable" positions over whether to adopt Akron's proposed modification of the EHRT requirement on June 23, 2023. (Doc.#416, District Court's Order, pg. 4, n.1, PageID#42305). Thus, under the plain language of Paragraph 67, the automatic stay took effect on June 23, 2023, and remains in effect until the judicial review process, including any appellate review, has been completed, and the dispute has been "resolved." (Doc.#155, Consent Decree ¶ 67, PageID#7252). The District Court, however, has erroneously ruled that Paragraph 67 does not apply. (Doc.#416, Order, dated 12/2/2024, PageID#42302-42308). Accordingly, based upon the automatic stay provisions of Paragraph 67, Akron hereby renews its Motion for a Stay of the EHRT requirements until this Court can resolve the dispute by deciding the merits of Akron's pending appeals.

## STATEMENT OF FACTS

### A.     Akron's Proposed Modification Of The Consent Decree

This civil action was commenced over 15 years ago based upon the allegation that Akron's sewer collection system violated Section 301(a) of the CWA and Akron's National Pollution Discharge Elimination System permit. (Doc.#1, Compl. filed 2/5/2009, PageID#1).  Instead of litigating the claims, the Parties engaged in negotiations that resulted in a Consent Decree that was approved on January 17, 2014.  (Doc.#155, Consent Decree, PageID#7211-7328).

Most of the control measures required by the Consent Decree are set forth in a 2011 Long Term Control Plan ("LTCP") Update.  (Doc.#123-2, 2011 LTCP Update, PageID#6388-6429).  Akron has now completed 24 of the 26 projects in the LTCP Update with the exception of (i) the EHRT facility required by Row 11.a, to treat the overflows from the Ohio Canal Interceptor Tunnel ("OCIT") and (ii) the Northside Interceptor Tunnel ("NSIT") under Row 12, which is currently under construction. (Doc.#371-3, Declaration of Patrick Gsellman ¶ 16-18, PageID#39916-17).

Once the NSIT is fully constructed, Akron will have incurred over $1 billion to implement the Consent Decree. (*Id*. at ¶ 21, PageID#39919).  As a result, Akron's sewer system will be eliminating or capturing 99% of the wet weather flows, and reducing the overall volume of sewer and secondary bypass outflows from 2.4 billion gallons to less than 100 gallons per year, even if the EHRT facility is not

built. (*Id.* at ¶ 28, PageID#39920).  Accordingly, due to this significant change in circumstances, Ohio EPA has determined that the EHRT facility is no longer a "cost effective or appropriate" control measure, and "will not be necessary to attain compliance" with Ohio's water quality standards.  (Doc.#373-2, Declaration of Ashley Ward, ¶ 6-12, PageID#40133-36).

The US EPA, however, has adopted a materially different and irreconcilable position, and has determined that, regardless of the cost increases and reduction in outflows, it would not agree to any modification unless it resulted in zero outflows from the OCIT. (*Id.* at ¶ 19, PageID#40137-38). This arbitrary and overly restrictive position, however, does not align with the US EPA's Combined Sewer Overflow Policy, which provides for "cost-effective" controls and governs all consent decrees under Section 402(q) of the Clean Water Act.  *See* 33 U.S.C. § 1342(q); CSO Policy, 59 Fed. Reg. 18688 (Apr. 19, 1994).  Thus, in September 2023, Akron filed a Motion with the District Court under the Dispute Resolution Procedures set forth in Section IV of the Consent Decree to request judicial review of this dispute.

B.    **The Stay Provisions In Paragraph 67 Of The Consent Decree.**

A dispute also has arisen between the Parties relating to whether Paragraph 67 of the Consent Decree grants an automatic stay of the EHRT requirement pending the completion of judicial review of whether the Consent Decree should be modified under Paragraph 113.  In particular, Paragraph 67 provides:

4

> If the United States and the State provide Akron with materially different or irreconcilable positions on the issue(s) in dispute, Akron's obligations to perform an action necessarily affected by the materially different or irreconcilable positions (and Akron's liability for stipulated penalties concerning such obligation) shall be stayed until the dispute is resolved.

(Doc.#155, Consent Decree, ¶ 67, PageID#7252).

As discussed more fully below, this stay language applies to *all* disputes between US EPA and Ohio EPA under Section IV of the Consent Decree, including disputes over proposed modifications under Paragraph 113 of the Consent Decree, which provides that "[a]ny disputes concerning modification of the Decree shall be resolved pursuant to Section IV of this Decree." (*Id.* at ¶ 113, PageID#7266). Yet, the District Court has wrongfully denied Akron's motion for a stay and has now concluded that Paragraph 67 does not apply to the dispute over Akron's proposed modification. (Doc.#416, Order, dated 12/02/2024, PageID#42302-08). Accordingly, in light of the District Court's ruling, Akron now renews its motion for a stay based upon the plain language of Paragraph 67 of the Consent Decree.

## LAW AND ARGUMENT

## I. THE COURT SHOULD CONCLUDE THAT AKRON IS ENTITLED TO AN AUTOMATIC STAY OF THE EHRT REQUIREMENT UNDER PARAGRAPH 67 OF THE CONSENT DECREE UNTIL AFTER THE PENDING DISPUTE OVER AKRON'S PROPOSED MODIFICATION HAS BEEN RESOLVED BY THIS COURT.

While the Court ordinarily must conduct an analysis of the four (4) traditional stay factors in deciding whether to grant a stay pending appeal, this case is different

because, as discussed more fully below, Paragraph 67 of the Consent Decree already provides for a stay of Akron's obligations to design and construct the EHRT facility until the dispute over Akron's proposed modification has been resolved. Accordingly, this Court does not need to engage in the traditional four factor test for a stay or injunction because an automatic stay has already been granted by operation of Paragraph 67 of the Consent Decree.

### A. The Court Should Reject The District Court's Ruling That Paragraph 67 Does Not Apply To Disputes Over Proposed Modifications.

In its Order, dated December 2, 2024, the District Court ruled that Akron's obligation to construct the EHRT facility is not stayed under Paragraph 67 because Akron's proposed modification requires court approval, and thus Akron's obligation to construct the EHRT facility cannot be stayed until the Court approves the proposed modification. (Doc.#416, Order, dated 12.2.2024, pg. 4, PageID#42305). This ruling confuses the difference between when a proposed modification take effect under Paragraph 112 and 113 of the Consent Decree, and whether a "stay" of Akron's existing obligations has been granted under Paragraph 67 until the "dispute" over the proposed modification has been "resolved." (Doc.#155, Consent Decree, ¶ 67, PageID#7252, and ¶ 112-113, PageID#7266-7267).

Akron agrees that the proposed modification cannot take effect until the District Court approves the modification under Sections 112 and 113 of the Consent Decree. Because the United States and the State of Ohio have taken "materially different" and

"irreconcilable" positions on whether Akron's proposed modification should be adopted, however, Paragraph 67 grants an automatic "stay" of "Akron's obligations to perform an action" that is "necessarily affected" by the proposed modification until the "dispute is resolved." (Doc.#155, Consent Decree ¶ 67, PageID#7252). This automatic stay took effect on June 23, 2023, and does not require court approval because the District Court already approved the stay language in Paragraph 67 when it approved the original Consent Decree. Thus, it is not necessary for the District Court to approve a second stay because Paragraph 67 already has granted a stay.

Indeed, by imposing a limitation on the automatic stay granted by Paragraph 67, the District Court has violated binding Supreme Court and Sixth Circuit precedent by wrongfully eliminating a key material term in the Consent Decree that Akron specifically negotiated when it agreed to the terms of the original decree. As the Supreme Court has held, "[c]onsent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Indeed, "because a defendant's waiver of rights to litigate certain issues—rights guaranteed by the Due Process Clause—are not to be perceived lightly, the conditions upon which he has given that waiver must be respected." *United States v. Southern Coal Corp.*, 64 F.4th 509, 514 (4th Cir. 2023) (citing *Armour*, 604 U.S. at 682). Thus, the Supreme Court has held that "the scope of a consent decree must be discerned within its four corners, and "the instrument

must be construed as it is written." *Armour*, 402 U.S. at 682; *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983) ("A consent decree . . . should be strictly construed to preserve the bargained for position of the parties.").

Here, the plain language of Paragraphs 67 and 113 of the Consent Decree, when read together, make clear that "***any*** disputes concerning *modification* of this Decree *shall be resolved pursuant to Section XIV of this Decree (Dispute Resolution)*," and it is undisputed that Section XIV includes the stay provisions in Paragraph 67 (Doc.#155, Consent Decree, ¶ 113, PageID#7266-7267) (emphasis added). Paragraph 67, in turn, provides that the stay provisions apply "*[i]f a dispute is subject to this Section*." (*Id.* at ¶ 67, PageID#7252) (emphasis added). Thus, it is clear that the stay language in Paragraph 67 was intended to apply to ***all*** disputes that are subject to Section XIV of the Consent Decree, including any disputes between the United States and the State of Ohio over whether to modify Akron's existing obligations under Paragraph 112 and 113.

Indeed, there is nothing in Paragraphs 67 and 113 that limits the scope of the stay language to whether the dispute involves the enforcement of an existing term versus the modification of an existing term. Moreover, there is nothing in Paragraph 67 expressly stating that the stay does not apply if the dispute involves a "material" modification of the Consent Decree, as the District Court found. Thus, the District Court's interpretation violates binding Supreme Court and Sixth Circuit precedent

because it inserts a limitation on the broad scope of the stay language in Paragraph 67 that cannot be found in the four corners of the document itself. *Armour*, 402 U.S. at 682 ("the scope of a consent decree must be discerned within its four corners," and "the instrument must be construed as it is written"); *see also Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 229 (6th Cir. 2019) (reversing district court's interpretation that terms of the consent decree could not be assigned because there was no anti-assignment clause in the four corners of the consent decree).

### B. The Court Should Reject The District Court's Interpretation Of The "Necessarily Affected" Language In Paragraph 67.

The District Court is also wrong in how it interprets the "necessarily affected" language in Paragraph 67. According to the District Court, the "necessarily affected" language should be read as intending to "carve out material modifications" from the stay provisions in Paragraph 67. (Doc.#416, Order, dated 12/02/2024, pg. 6, PageID#42307). Again, this is reversible legal error because it once again creates an exception to the stay provisions that cannot be found in the four corners of the document itself, which provides that the stay provisions of Paragraph 67 apply to all disputes between the United States and Ohio regarding modifications, not merely disputes regarding "immaterial" modifications that do not require Court approval.

Indeed, contrary to the District Court's suggestion, the "necessarily affected" language is not intended to create an exception to the stay requirement. Rather, it is clearly intended to define the scope of the automatic stay by providing that the stay

only applies to the obligations that are "necessarily <u>affected</u>" by the dispute. Here, it is <u>undisputed</u> that the United States and Ohio have adopted "materially different" and "irreconcilable" positions on whether to modify the Consent Decree to eliminate the EHRT requirement in Row 11.a of the LTCP Update. (Doc.#416, Order, pg. 4, fn. 1, PageID#42305). Under the plain language of Paragraph 67, therefore, "Akron's obligations to perform an action" that are "necessarily <u>affected</u> by the materially different or irreconcilable positions on the <u>issue(s) in dispute</u>" (*i.e.*, Akron's <u>existing</u> "obligation" to perform the actions necessary to construct the EHRT facility) shall be <u>stayed</u> "until the dispute" over the proposed modification is "resolved." (Doc.#155, Consent Decree, ¶ 67, PageID#7252). The "necessarily affected" language, therefore, does not have any special meaning except to ensure that the stay only applies to the obligations that are "necessarily affected" by the dispute. (*Id.*)

For this reason, the stay language in Paragraph 67 has meaning only if it applies to a dispute between the two regulatory agencies over whether Akron should perform an <u>existing</u> obligation under the Consent Decree. Otherwise, there would be nothing to "stay." Thus, while a <u>modification</u> would not become "effective" under Paragraph 112 until it has been approved by the District Court, the plain language of Paragraphs 67 and 113 nevertheless provides that any existing obligations that are "necessarily affected" by the dispute shall be "stayed" until the dispute over the proposed modification is resolved. Accordingly, since the existing EHRT deadlines would be

"necessarily affected" by the "materially different and irreconcilable positions" of each agency, Akron's obligations to bid and construct the EHRT facility have been stayed by operation of Paragraph 67 until this "dispute" has been "resolved."

### C. The Court Should Reject The District Court's Ruling That Akron's Interpretation Of Paragraph 67 Will Lead To An "Absurd Result."

The Court also should reject the District Court's ruling that Akron's interpretation of Paragraph 67 leads to an "absurd result" because a stay would not be triggered if "both the United States and the State agreed to Akron's proposed modification." (Doc.#416, Order, pg. 6, PageID#42307). This is a legally erroneous ruling because it once again imposes a judicial limitation on the scope of the stay granted by Paragraph 67 that cannot be found in the four corners of the Consent Decree itself. Indeed, as the Supreme Court held in *Armour*, 402 U.S. at 682, it would be legal error for the District Court to impose its own limitation on the stay provision merely because it now believes that a stay would not advance the purposes of the Consent Decree. *Id.*, 402 U.S. at 682 ("For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it").

Here, the language of Paragraph 67 was carefully negotiated by the Parties to ensure that Akron would retain the ability to apply for and obtain proposed modifications of its existing obligations without incurring liability for stipulated penalties (and contempt) until the "dispute" over the proposed modification is

"resolved." Indeed, the fact that the stay only takes effect if the United States and the State of Ohio adopt "materially different" and "irreconcilable" positions on the proposed modification does not mean that a stay would undermine the purposes of the Consent Decree. Rather, such language is better interpreted as a <u>compromise</u> that recognizes that a stay should not be granted if both of the regulatory agencies reject Akron's proposed modification, and that a stay would not be necessary if both of the regulatory agree that the proposed modification should be granted.

In this regard, the District Court's ruling misconstrues the Dispute Resolution Procedures in Section IV. Under the Dispute Resolution Procedures in Section IV, if the United States and Ohio both <u>agreed</u> with Akron's position, there would be no dispute, and there would be no stay. However, this also means that the parties would have avoided the lengthy dispute resolution process in Section IV, and would have presented a Joint Motion to Modify the Consent Decree supported by all parties. Thus, in that circumstance, Akron did not need to negotiate for an automatic stay because a stay would not be <u>necessary</u> if both regulatory agencies <u>agree</u> with Akron's position and would be promptly moving for a modification without imposing any stipulated penalties. Therefore, the fact that Paragraph 67 does not impose a stay when the two regulatory agencies mutually agree to Akron's proposed modification is perfectly logical because there is no need for a stay in that situation.

Similarly, it is also logical that the stay would not arise if the United States and Ohio both reject Akron's proposed modification. It makes sense that the two regulatory agencies would want to limit the scope of the stay provision to the situation where Akron convinces <u>one</u> of the two regulators that the proposed modification is appropriate. In so doing, the stay provision serves an important equitable purpose when there is a material dispute between the United States and the State of Ohio over a proposed modification. Without the stay provision, the dissenting regulator would have an incentive to engage in delay tactics in order to drag out the dispute resolution process for months or even years, forcing Akron to consider waiving its rights to judicial review and/or an appeal out of fear of incurring significant stipulated penalties, which can quickly amount to millions of dollars. (*See* Ex. A, Ludle Decl. ¶ 17-20).

Ultimately, the undisputed fact remains that the Parties carefully negotiated the terms of Paragraph 67 and, on its face, it applies if the United States and Ohio EPA adopted materially inconsistent positions about a proposed modification. While the District Court may disagree with the terms of Paragraph 67, the undisputed fact remains that the District Court approved Paragraph 67 when it originally approved the Consent Decree, and it is therefore cannot impose a limitation on Paragraph 67 that cannot be found in the four corners of the Consent Decree itself.

**D.   The Stay Remains In Effect Until The Appellate Process Has Been Completed, And The Dispute Has Been Resolved By The Courts.**

In proceedings below, the State of Ohio agreed that Paragraph 67 applies to the dispute over Akron's proposed modification of the Consent Decree, but took the position that the stay ended on March 1, 2024, when the District Court denied Akron's Motion to Modify the EHRT Requirement.  (Doc#402, PageID 41522-41524). This argument, however, ignores the fact that the District Court's denial of a Motion to Modify a Consent Decree under Rule 60(b)(5) is subject to appellate review.  Thus, the "dispute" over the proposed modification will not be "resolved" by the courts until the appellate process has been completed.  Accordingly, since the dispute over Akron's proposed modification has not yet been "resolved" and remains pending before the Court of Appeals, the stay granted by Paragraph 67 continues until the appellate process has concluded and the dispute has been "resolved."

## II.   THE COURT SHOULD GRANT A STAY BASED UPON A BALANCING OF THE RELEVANT STAY/INJUNCTION FACTORS.

Even if the Court were to balance the relevant four (4) factors in deciding whether to grant a stay, all four factors weigh strongly in favor of a stay.

**A.   Akron Is Likely To Prevail On The Merits Of Both Appeals.**

The first factor weighs strongly in favor of a stay because, as set forth more fully in Akron's Merit Brief, Akron has a strong likelihood of success on appeal. Akron has presented a number of significant legal issues that are subject to *de novo*

review that show that the District Court committed reversible legal errors by failing to follow the legal standards for the modification of a consent decree and the legal requirements of Section 402(q) of the Clean Water Act.  (*See* Appellant's Merit Brief, filed 6.22.2024, and Appellant's Reply Brief, filed 9.16.2024).  Moreover, Akron is likely to prevail on its second appeal because the plain language of Paragraph 67 and 113, when read together, clearly and unambiguously apply the stay language in Paragraph 67 to disputes over proposed modifications, and it would violate binding Supreme Court precedent to impose any limitation on the scope of the stay language in Paragraph 67 that cannot be found in the four corners of the Consent Decree itself.  *Armour*, 402 U.S. at 682.  Accordingly, Akron is likely to prevail on the merits of both of the pending appeals.

**B.    Akron Will Suffer Irreparable Harm Absent A Stay.**

A stay also should be granted because Akron will suffer irreparable harm. While the Motion Panel that decided Akron's original stay motion found that Akron failed to demonstrate an imminent, irreparable injury, Akron has submitted a new Declaration of Chris Ludle that contains updated information that has arisen since Akron filed its original stay motion on April 1, 2024.  (*See* Ex. A, Supplemental Declaration of Christopher Ludle, dated 12.17.2024).

As set forth therein, Ludle explains that Akron is now moving forward, in light of the Court's denial of the original stay motion, with bidding of the

construction of the EHRT facility, which will result in Akron incurring approximately $750,000 dollars of non-recoverable costs for a basis of design report and the up-front cost of initial equipment that must be paid in the next 60-90 days. (Ludle Supp. Decl. ¶ 7-15).  Akron will then incur an additional $1.3 million for the Burgess & Niple design work, which will begin immediately after the completion of the basis of design report. (*Id.* at ¶ 12-13).  Once the design work is completed, Akron will move forward with the advertisement of bids and the selection of a contractor.  (*Id.* at ¶ 7-8, 20-23).  Once the contracts are signed, then Akron will owe the money to the contractors, and it will be liable for breach of contract damages if it subsequently terminates the EHRT contracts.  (*Id.* at ¶ 22-23).  None of these costs and damages, however, will be recoverable if Akron prevails on its appeals.  (*Id.*)

While financial injury, standing alone, ordinarily does not satisfy the irreparable harm standard if damages could be recovered at a later date, Akron's injury is irreparable because it will not be able to recover damages from the United States if it is forced to incur the costs set forth above and enter into contracts to construct the $209 million EHRT facility. As this Court has held, this is the definition of <u>irreparable</u> harm.  *See Ohio v. Becerra*, 87 F.4th 759, 782-783 (6th Cir. 2023) (finding that Ohio would incur irreparable harm because "economic injuries caused by federal agency action are generally unrecoverable").

In this regard, Akron previously delayed the bidding of the EHRT facility because it had filed stay motions that were pending with the Court and the District Court, and did not want to incur this irreparable injury if the Court granted the original stay motion or the district court applied the plain language of stay provision in Paragraph 67 of the Consent Decree. (Ludle Supp. Decl. ¶ 6). Now, however, since the Court denied Akron's original stay motion, and the district court issued its ruling, Akron has no choice but to move forward with the design and construction of the EHRT facility. (*Id.* at ¶ 7). The bidding deadline expired on April 30, 2024. Thus, unless a stay is granted based upon the language of Paragraph 67, Akron will have incurred over $1 million in stipulated penalties, and will continued to incur an additional $5,000 per day until Akron complies with the Consent Decree bid requirements. (*Id.* at ¶ 17-19). Moreover, Akron already knows that it cannot meet complete construction of the EHRT in time to meet the Consent Decree's deadline of October 30, 2027. (*Id.* at ¶ 20). This will likely result in an additional $2.2 million in stipulated penalty liability if a stay is not granted based upon Paragraph 67. Thus, it is critically important for this Court to rule that Paragraph 67 grants an automatic stay until the dispute over Akron's proposed modification has been resolved.

**C.    A Stay Will Not Substantially Injure Any Third Parties And Will Advance The Public Interest.**

The third factor also weighs in favor of a stay. There is no immediate need to force Akron to move forward with the construction of a $209 million EHRT facility

until after the Court resolves the merits of the two pending appeals. The original 2011 LTCP Update already envisioned that Akron would not be required to put the EHRT into operation until October 31, 2027, and thus, the Parties agreed that Akron would be able to continue to operate its sewer system for over 16 years without an EHRT. Moreover, due to substantial improvements in Akron's sanitary sewer system, the number and volume of sewer overflows have dramatically been reduced from the original prediction that served as the basis for the EHRT. Thus, based upon this significant change in circumstances, Ohio EPA has determined that Akron will now be within the "margin of error" (0.04%) of its bacteria allocation under Ohio's total maximum allocation load ("TMDL") and remaining discharges will not violate Ohio's water quality standards. (Doc.#371-3, Gsellman Decl. ¶ 38, PageID#39922-23); (Doc.#373-2, Ward Decl. ¶ 10-12, PageID#40134-35); (Doc.#373-3, Declaration of David Brumbaugh, ¶ 15-17, PageID#40143-44). Under the circumstances, therefore, it would not cause substantial harm to third parties if implementation of the EHRT requirement were temporarily delayed until after the pending appeals can be decided on the merits.

Finally, the Court also should conclude that the fourth factor weighs in favor of a stay. Here, the public interest is advanced by ensuring that Akron and its taxpayers are not required to pay for a $209 million facility until after the Court resolves the pending appeals on the merits. Indeed, in Section 402(q) of the Clean

Water Act, Congress has mandated that each Consent Decree must conform to the US EPA's CSO Policy, which, in turn, mandates that sewer overflow controls must be "cost-effective." *See* 33 U.S.C. § 1342(q)(1); 59 Fed. Reg. at 18688. Thus, it would advance the public interest to stay the implementation of the EHRT requirement until this Court can decide the merits of the important legal question of whether the EHRT requirement no longer conforms to the CSO Policy. Moreover, the key stakeholders for the Cuyahoga River all support Akron's proposed modification, which further demonstrates that the public interest is best served by the granting a stay. (*See* Amicus Brief on behalf of Friends of the Crooked River, Ohio & Erie Canalway Coalition and Summit Metro Parks, filed on 6/27/2024).

## CONCLUSION

For all of these reasons, Akron respectfully renews its request that the Court issue an Order staying the obligation to design and construct a EHRT facility pending the resolution of the dispute that is the subject of Akron's appeal.

Respectfully submitted,

 /s/  Stephen W. Funk
Stephen W. Funk (0058506)
Terrence S. Finn (0039391)
Roetzel & Andress, LPA
222 South Main Street
Akron, OH  44308
Telephone: 330.376.2700
Email:  sfunk@ralaw.com

*Attorneys for Appellant City of Akron*

19

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Motion and Brief in Support complies with the word count limitation in the Federal Rules of Appellate Procedure.  In particular, the text of the foregoing Motion and Brief contains 5,142 words based upon the word count performed by the Microsoft Word software, excluding the caption, signature blocks, and certificates of compliance and service.

*/s/  Stephen W. Funk*
Stephen W. Funk


## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of December, 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all Parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

*/s/  Stephen W. Funk*
Stephen W. Funk

22488398 _5

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 24-3277 |
| | ) | |
| Plaintiff-Appellee, | ) | On appeal from the U.S. District |
| | ) | Court for the Northern District of |
| vs. | ) | Ohio, Case No. 5:09-CV-00272 |
| | ) | |
| CITY OF AKRON, OHIO, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| STATE OF OHIO, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**SUPPLEMENTAL DECLARATION OF CHRISTOPHER D. LUDLE**

I, Christopher D. Ludle, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a competent adult and I have personal knowledge of the facts and information set forth in this Supplemental Declaration.

2.      I am the City of Akron ("Akron") Director of Public Service.

3.      I signed a Declaration on March 29, 2024 that was filed with the United States District Court for the Northern District of Ohio in Case No. 5:09-cv-00272 in support of the City of Akron's motion seeking a stay of the requirement to build the Enhanced High Rate Treatment unit ("EHRT").

4.      My March 29, 2024 Declaration includes a summary of my duties as Akron's Director of Public Service and an explanation of the irreparable harm that

the City of Akron will suffer if it is forced to move forward with the implementation of the EHRT project.

5.      The Consent Decree requires Akron to advertise bids for the EHRT project by April 30, 2024 (the 'bid deadline") and to complete construction and place the EHRT into operation no later than October 31, 2027 (the "achievement of full operation deadline").

6.      Akron did not advertise bids by the bidding deadline because it was waiting for a ruling on its motion to stay the requirement to construct the EHRT. In addition, Akron was also waiting on a ruling from the District Court on Akron's motion on the applicability of the stay provision in Paragraph 67 of the Consent Decree.

7.      In light of the Sixth Circuit's December 10, 2024 decision denying Akron's request for stay and in light of the District Court's December 2, 2024 decision that the stay provision in Paragraph 67 of the Consent Decree does not apply to Akron's request to modify the EHRT requirement, Akron is now forced to move forward with the EHRT project.

8.      In order to advertise bids for the EHRT project Akron needs to prepare a bid package that includes design documents for the EHRT.

9.       Akron is in the process of entering into a contract with Burgess & Niple, Inc ("B&N"), an experienced engineering design firm, to prepare the design of the EHRT.

10.      The contract with B&N will have two deliverables. A basis for design report and the EHRT design and associated bid documents.

11.      B&N estimates that it will take approximately 60 to 90 days from the contract date to complete the basis of design report at a cost of approximately $500,000. This work will include the survey evaluation discussed in my March 29, 2024 Declaration. Even if Akron wins its pending appeal, Akron will still be required to pay B&N for preparing the basis of design, and Akron will not be able to recover this money.

12.      B&N estimates that it will need an additional six months to complete the EHRT design and bid documents at a cost of approximately $1.3 million. This work will include, but is not limited to the and geotechnical evaluation discussed in my March 29, 2024 Declaration. Even if Akron wins its pending appeal, Akron will still be required to pay B&N for preparing the design of the EHRT, and Akron will not be able to recover this money.

13.      Even if Akron wins the appeal before B&N completes the design of the EHRT, Akron will still need to pay B&N for the portion of the work that B&N has completed at that time. For example, if B&N has completed 50% of the design of

the EHRT at the time Akron wins its appeal, Akron will still be required to pay B&N $650,000.

14.    The EHRT project includes a backup power generator, that will likely be 800 kilowatt in size.  Akron was required to install backup generators for multiple other control measures that Akron has constructed under the Consent Decree.  B&N has advised Akron that there is a significantly long lead time to manufacture the generator, which could be as long as two years.  Akron experienced long lead times for the other backup generators it has obtained and installed under the Consent Decree.  Due to this long lead time, B&N has advised Akron to move forward with ordering the backup generator at this time.  Therefore, Akron intends to advertise bids for obtaining and installing the backup generator while B&N is preparing the basis of design report.

15.    B&N estimates that the cost of the backup generator is approximately $1 million dollars.  Based upon B&N's and Akron's combined experience in the purchasing of large equipment, including but not limited to large backup generators, Akron may likely need to pay the successful bidder approximately 25% of total amount, i.e. approximately $250,000, at the time Akron signs the contract with the equipment manufacturer. This is because the equipment manufacturer will be immediately incurring the cost to build the equipment at the time it enters into the contract.  Based upon B&N's and Akron's combined experience, Akron will not be

able to recover this payment once it enters into the contract. Thus, Akron will not be able to recover this payment, even if it wins its appeal.

16.      Even if Akron terminates the contract for the backup generator at a later date, it may potentially incur additional damages for breach of contract that Akron will be unable to recover if it prevails on the pending appeals. Therefore, if Akron does not receive a decision on the appeal before it enters into the contract with the successful bidder, it will not be able to recover this payment, even if Akron wins the appeal.

17.      Section XI of the Consent Decree includes a stipulated penalty provision. The EHRT bid deadline and achievement of full operation deadline are each subject to the stipulated penalties listed in paragraph 35 of the Consent Decree.

18.      The stipulated penalties in paragraph 35 of the Consent Decree accrue on a daily basis for each missed deadlines, and for each day a deadline is missed over 60 days, stipulated penalties accrue at a rate of $5,000 per day.

19.      Because Akron did not bid the project by the April 30, 2024 bid deadline, it is currently potentially liable for over $1 million in stipulated penalties, and this amount will continue to accrue at a rate of $5,000 per day until Akron meets the requirement for bidding the EHRT in accordance with the Consent Decree.

20.      Even though the achievement of full operation deadline for the EHRT is not until 2027, Akron already knows, due to the delay in bidding the EHRT, that

Akron will not meet the achievement of full operation deadline. Since Akron is now moving forward with the EHRT, B&N estimates that the EHRT will achieve full operation approximately 1 year and 4 months beyond the current deadline. This equates to a potential liability of more than $2.2 million in additional stipulated penalties.

21.     Akron has decided that the EHRT will be bid as a construction manager at risk ("CMR") contract. Akron made this decision because under a CMR process Akron will be able to complete the design and advertise bids earlier in time compared to a traditional design-bid-build process.

22.     Based upon Akron's experience with other large construction projects, Akron will need to immediately pay the successful bidder or the equipment manufacturer upfront money which will likely be 30% or more of the total cost of the major equipment at the time that Akron enters into a contract with the successful bidder. As an example, Akron had to pay 30% of the upfront cost of the tunnel boring machine for the Northside Interceptor Tunnel project, which is currently under construction. There is an extremely long lead time to manufacture the EHRT equipment, and if the manufacturer does not immediately begin work, it will result in additional delays in completing the project, and Akron will be liable for even greater stipulated penalties. B&N currently estimates that 30% of the major EHRT equipment cost will be approximately $8,000,000.

23.      Based upon Akron's experience with other large infrastructure projects, including several large projects that Akron has constructed under the Consent Decree, Akron will not be able to recover the upfront payment for the major EHRT equipment once it enters into the contract.   This is because the equipment manufacturer will immediately be incurring the cost to build the equipment.   Even if Akron terminated the construction contract at a later date, it may potentially incur additional damages for breach of contract that Akron will be unable to recover if it prevails on the pending appeals.   Therefore, if Akron does not receive a decision on the appeal before it enters into the contract with the successful bidder, it will not be able to recover this payment, even if Akron wins the appeal.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the __17__ day of December, 2024.

Chris D. Ludle

22486411    1